KATE TAYLOR *v*. WILLIS GARRETT.

[57 South. 658.]

MARRIAGE. *Sufficiency of evidence.*

> In a case involving the validity of a second marriage, testimony
> of complainant and her son, that in 1878 her former husband
> was taken sick and carried to the county poorhouse at which
> time she left him; that she was afterwards informed that he
> had died; that she took the household effects; that she had
> never heard of him since and had never doubted his death; that
> she again married in the year 1883; was sufficient in the absence
> of any proof to the contrary to establish the validity of the
> second marriage.

APPEAL from the chancery court of Issaquena county.
HON. M. E. DENTON, Chancellor.

Bill in chancery by Kate Taylor against Willis Gar-
rett. From a decree for defendant, complainant appeals.

Appellant filed her bill in chancery, alleging that Sam-
uel Garrett and his brother, Willis Garrett, purchased
and became tenants in common of certain land in Issa-
quena county. About the year 1893 Samuel Garrett
died without issue, leaving, as the bill alleged, as his only
heir at law, the appellant, his wife, now Kate Taylor.
The bill alleges that the land is incapable of partition,
and prays for a sale of same and distribution of the pro-
ceeds between herself and Willis Garrett. The bill al-
leges, further, that said land was sold for taxes one year,
and it became necessary for the complainant to redeem
same from tax sale, and that she had made demand upon
the defendant for her part of the property of her de-
ceased husband, and prays for an accounting for rents
and profits, less whatever taxes were paid by defendant.
The bill does not waive answer under oath. The de-
fendant answered, denying generally all the allegations

of the bill, and he attempts to swear to the answer on information and belief.

On the hearing the testimony of the complainant, who testifies in her own behalf, as does her son, shows that some time prior to 1879 she was married to a man named Joshua Whitfield; that she left him about the year 1878, when he was taken sick, and carried to the county poorhouse; that she was afterwards informed that he had died, and that she took what household effects had been theirs. Her son, who was a small boy at that time, corroborates her testimony. Neither of these witnesses saw Joshua Whitfield after his death, and no witnesses are produced who did see him. Afterwards, in the year 1883, appellant married Samuel Garrett. Appellant had never heard of Joshua Whitfield since his reputed death, and never doubted that she had been correctly informed as to his death. It was attempted to be shown, in cross-questioning these witnesses, that John Whitfield is not dead, and that appellant's marriage to Samuel Garrett was null and void; but no proof is offered by appellee. Appellant testifies that she lived on the land with Samuel Garrett and helped him clear it up, and that a short while before his death they had separated. The defendant below offered no testimony at all, other than the answer, which is attempted to be sworn to on information and belief, which is simply a general denial of all the allegations of the bill.

On the hearing the chancellor entered a decree dismissing the bill, from which comes this appeal.

*W. E. Mollison,* for appellant.

While we do not know, because the defendant did not introduce any evidence whatever, what his defense might have been, we infer from the line of questions asked that he wishes to attack the validity of the second marriage of the complainant herein, on the ground that the first husband was alive. We do not wish to more than call the

attention of this honorable court to the fact that the law presumes everything in favor of the validity of a marriage and so jealous of this on this score that it will presume a death in order to make valid a marriage. It is always incumbent upon him who seeks to overthrow the effect of a marriage to show the affirmative of his contention. When one asserts that he is the widower or late husband of a deceased or the widow of a man, whosoever would disturb or set aside this statement must affirmatively show that the marriage was either invalid when it was consummated, or that it had been terminated by death or divorce, or in some manner other than the mere presumption. If this was not the law the very fabric of society would be uprooted. It is necessary that the marriage state be presumed, for any other rule would work not only violence to sentiment, but would up set all property rights and put to the test of the brutal inquiry the most delicate relations of life.

*Green & Green,* for appellant.

The only evidence shows that appellant when about fourteen years old was married to one Joshua Whitfield from whom she was separated in the year following the yellow fever epidemic in 1878. At the time of the separation, Whitfield was ill and was carried away to the county poorhouse by a constable. These facts are proven by two witnesses, and furthermore while they do not depose that they saw Joshua Whitfield dead, still they prove that it was common report that he had died and had been buried, and that his wife went over to the place at which he had died and got the few belongings which he left. Apparently it was contended by appellee that the marriage between Garrett and appellant was void by reason of Joshua Whitfield, the former husband, being alive at that time. On this record the rule is laid down in *Beardsley* v. *A. & V. R. R. Co.,* 79 Miss. (1902) 417, is directly operative, wherein it was declared,

"A marriage duly proved will be presumed valid, although a former wife or the man may be still living and there be no evidence of a divorce from her, the burden of proof to show the negative fact that there was no divorce being on the party who denies the validity of the second marriage."

The authorities are reviewed at length and we especially direct attention to the authorities therein collated. Also, we submit, that *Hull* v. *Rawles,* 27 Miss. (1855) 471, is directly in point.

"On the part of the administrator, it was proved that James C. Rawles was living in the year 1844, in Chickasaw county, with a woman whom he treated as his wife and that the parties were recognized as husband and wife in the community.

"Another witness proved that he heard Rawles say, after his marriage with petitioner, and in her presence, that his first wife was then living in the state of Georgia. This was, in substance, all the evidence introduced on the trial in the court below.

"Aside from the statement of Rawles, there is nothing in the testimony which raises a suspicion against the validity of the marriage. The fact that the deceased was living in 1844 with a woman believed to be his wife, is no evidence that she was living on the 6th of December, 1848. The marriage having been solemnized according to the forms of law, every presumption must be indulged in favor of its validity. The statement of Rawles, while it could have been used as evidence against him in a proceeding in which he was directly interested, or could be affected, cannot be used to the prejudice of the petitioner. By consummating the marriage, he admitted that he could then legally enter into the alliance. The statement may have been true, that the first wife was then living; and still it would not necessarily follow that she was in a legal sense his wife, as the parties may have been legally divorced." See, also, *Spears* v. *Burton,* 31 Miss. (1858) 555.

''6.   The marriage of the plaintiff's mother with his father, A. P. Burton, although it may have been within five years after the departure of her former husband, Bayard, is to be held valid by the jury, unless the proof satisfies them that Bayard was alive at the time of the marriage of A. P. Burton with the plaintiff's mother; the presumption of law as, to the continuance of the life of Bayard after his departure, will not be sufficient to establish the fact that Bayard was alive at the time of the marriage of A. P. Burton with plaintiff's mother.

''We consider these instructions as stating the correct rule upon the subject.   It is true that the presumption of law is, that Bayard was alive until the lapse of five years after his departure had given rise to the presumption of law that the marriage of the plaintiff's father and mother was valid, it having been solemnized in due form of law.   It was valid, unless the former husband was living at that time.   But unless he was shown to be then living, the presumption must be indulged that he was dead; because, otherwise, the second marriage would be held criminal by reason of a presumption which would be to establish a crime upon a bare presumption. *Rex* v. *Gloucestershire,* 2 Barn. & Ald. 386.   Moreover, the probabilities greatly strengthen the legal presumption of Bayard's death at the time, and show its justice under the circumstances of this case, as he has never been heard of since his departure.   It would therefore be unjust and unreasonable to give force to the presumption that he was living at the time of the second marriage, when subsequent facts tend strongly to show that the presumption of his death, upon which the parties acted, was true in point of fact.''

In *Wilkie* v. *Collins,* 48 Miss. (1873), 511:   ''The controversy originated about this administration in 1871, eleven years after Mrs. Roberts supposed that her husband had died, and about nine years after she had married Wilkie, the intestate; and yet in this long interval nobody has ever heard of him alive.''

These cases, we submit, demonstrate the validity of the marriage between Garrett and his wife. The burden of proof to show that Joshua Whitfield was alive at the date of the marriage of Samuel Garrett and Kate Whitfield was upon appellee, and that burden has not been met. The marriage has been shown beyond a peradventure of a doubt, and the sole contention that can be made is that as appellant had had a former husband that he was alive at the date of her marriage. The law does not allow any such presumption, and in fact every presumption is indulged in favor of the validity of the marriage, and as it appears by the record of the county to have been valid and so treated by all parties, and the alleged dead husband not having been heard from since 1879 either by his wife or by his own children, it is not a violent presumption to indulge that Joshua Whitfield died in the poorhouse at the time mentioned.

*John N. Bush* and *McLaurin, Armstead & Brien,* for appellee.

The note of evidence made by the chancellor shows that the deposition of Kate Taylor was introduced. Certainly that means the complete disposition or otherwise the chancellor would have made mention of it or would have excluded it. Under these circumstances, and in consideration of the presumption that follows as to the correctness of the judgment of the court below, we do not see how this court can undertake to say that it was not shown on the trial below that Kate Taylor's first husband Joshua Whitfield, was not living at the time of her marriage or pretended marriage to Samuel Garrett; and if this was shown to be true, which must have been presumed from the condition of the record, there was no other conclusion that the court below could reach except to deny the grounds of relief as prayed for in the bill of complaint. Under these circumstances, and until the record is complete, we consider it absolutely unnec-

essary and useless to be drawn into a discussion of the facts in this case or a discussion of the law and the pleadings.

Argued orally by *Gardner W. Green,* for appellant.

WHITFIELD, C.

We cannot concur in the view of the learned chancellor of the court below, whose view must have rested upon the idea that the evidence was not sufficient to establish the marriage. We think the evidence clearly shows a marriage.

PER CURIAM.—The above opinion is adopted as the opinion of the court, and, for the reasons therein indicated, the decree is reversed, and the cause remanded.

*Reversed and remanded.*